UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| JAMES FRANCISCO FUENTES, JR.,<br><br>              Plaintiff,<br><br>     v.<br><br>DIAZ, *et al.*,<br><br>              Defendants. | Case No. 1:24-cv-00865-EPG (PC)<br><br>FINDINGS AND RECOMMENDATIONS, RECOMMENDING THAT THIS ACTION BE DISMISSED WITH PREJUDICE FOR FAILURE TO STATE A CLAIM, FAILURE TO PROSECUTE, AND FAILURE TO COMPLY WITH A COURT ORDER<br><br>(ECF Nos. 1, 9).<br><br>OBJECTIONS, IF ANY, DUE WITHIN THIRTY DAYS<br><br>ORDER TO ASSIGN A DISTRICT JUDGE |

Plaintiff James Francisco Fuentes, Jr., is a state prisoner proceeding *pro se* and *in forma pauperis* in this civil rights action filed under 42 U.S.C. § 1983. (ECF Nos. 1, 6). His complaint, filed on July 29, 2024, alleges that Defendants retaliated against him and denied him due process in relation to prison disciplinary proceedings.[1] (ECF No. 1).

On December 30, 2025, the Court screened the complaint and concluded that Plaintiff failed to state any cognizable claims. (ECF No. 9). The Court gave Plaintiff thirty days to file a first amended complaint or to notify the Court that he wanted to stand on his complaint. (*Id.* at 8). And the Court warned Plaintiff that "[f]ailure to comply with this order may result in the dismissal of this action." (*Id.*).

---

[1] This case was reassigned to the undersigned on October 6, 2025. (ECF No. 8).

The deadline to respond to the screening order has expired, and Plaintiff has not filed an amended complaint or otherwise responded to the Court's order. Accordingly, for the reasons given below, the Court will recommend that Plaintiff's case be dismissed, with prejudice, for failure to state a claim, failure to prosecute, and failure to comply with a court order.

## I.    SCREENING REQUIREMENT

The Court is required to screen complaints brought by prisoners seeking relief against a governmental entity or officer or employee of a governmental entity. 28 U.S.C. § 1915A(a). The Court must dismiss a complaint, or a portion of it, if the prisoner has raised claims that are frivolous or malicious, that fail to state a claim upon which relief may be granted, or that seek monetary relief from a defendant who is immune from such relief. 28 U.S.C. § 1915A(b)(1), (2). Additionally, as Plaintiff is proceeding *in forma pauperis*, the Court may dismiss a claim on these same bases under 28 U.S.C. § 1915(e)(2)(B)(i-iii). (ECF No. 6).

A complaint is required to contain "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). Detailed factual allegations are not required, but "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citing *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007)). A plaintiff must set forth "sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Id.* (quoting *Twombly*, 550 U.S. at 570). The mere possibility of misconduct falls short of meeting this plausibility standard. *Id.* at 679. While a plaintiff's allegations are taken as true, courts "are not required to indulge unwarranted inferences." *Doe I v. Wal-Mart Stores, Inc.*, 572 F.3d 677, 681 (9th Cir. 2009) (citation and internal quotation marks omitted). Additionally, a plaintiff's legal conclusions are not accepted as true. *Iqbal*, 556 U.S. at 678.

Pleadings of *pro se* plaintiffs "must be held to less stringent standards than formal pleadings drafted by lawyers." *Hebbe v. Pliler*, 627 F.3d 338, 342 (9th Cir. 2010) (holding that *pro se* complaints should continue to be liberally construed after *Iqbal*).

## II.    SUMMARY OF PLAINTIFF'S COMPLAINT[2]

Plaintiff alleges that the violations at issue occurred at "SATF Facility." (ECF No. 1, p. 1). He sues two Defendants: (1) SATF ISU Officer Diaz; and (2) SATF "Reviewing Authority" Officer Delgado. Plaintiff alleges the following claims and facts:

> Defendants violated Plaintiff's Eighth and Fourteenth Amendment rights by restricting his visiting privileges as punishment for bad behavior or not fully cooperating in any investigation even though Plaintiff answer[ed] every question to the best of his ability over some mail that was sent under Plaintiff's name containing methamphetamine which was intercepted and opened by Officer Diaz (ISU) at SATF Facility in 2022. Even though the inmate handbook states that contact visits cannot be suspended as a form of punishment, ISU Officer Diaz put Plaintiff in solitary confinement for 9 days, suspended his visits, and allowed his personal feelings about Mr. Fuentes to interfere with his professionalism, with the deliberate indifference that disciplinary proceedings were conducted the wrong way and the alleged D.A. referral was never filed in court and Plaintiff never had a 115 hearing even though many grievance forms were submitted and reviewed by Grievance Office of Appeals Staff A. Delgado . . . requesting status of 2023 D.A. referral though last one was granted on 7/13/2024 and the appeal has been assigned for review and response. It is obvious by now that this action against my family and I is a purely retaliatory decision led by Mr. Diaz (ISU) and the fact that Plaintiff's name has not come up in any D.A. referral investigation proves my contention, it is a retaliation rather than an investigation because had a real investigation truly been done, surely, I would have been cleared of any wrongdoing. Add to that the fact that I haven't had a 115 hearing or received any 115 paperwork at all for 11 months. So, [it] is plain to see what is really going on, [it] is a cruel and unusual punishment.

(*Id.* at 3-4).

Plaintiff requests $500,000 in relief and asks for his contact-visits back. (*Id.* at 5).

## III.    ANALYSIS OF PLAINTIFF'S COMPLAINT

### A.    Section 1983

The Civil Rights Act under which this action was filed provides as follows:

> Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory or the District of Columbia, subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an

---

[2] For readability, minor alterations, like changing capitalization and correcting misspellings, have been made to some of Plaintiff's quotations without indicating each change.

action at law, suit in equity, or other proper proceeding for redress . . . . 42 U.S.C. § 1983. "[Section] 1983 'is not itself a source of substantive rights,' but merely provides 'a method for vindicating federal rights elsewhere conferred.'" *Graham v. Connor*, 490 U.S. 386, 393-94 (1989) (quoting *Baker v. McCollan*, 443 U.S. 137, 144 n.3 (1979)); *see also Chapman v. Houston Welfare Rights Org.*, 441 U.S. 600, 618 (1979); *Hall v. City of Los Angeles*, 697 F.3d 1059, 1068 (9th Cir. 2012); *Crowley v. Nevada*, 678 F.3d 730, 734 (9th Cir. 2012); *Anderson v. Warner*, 451 F.3d 1063, 1067 (9th Cir. 2006).

To state a claim under § 1983, a plaintiff must allege that (1) the defendant acted under color of state law, and (2) the defendant deprived him of rights secured by the Constitution or federal law. *Long v. County of Los Angeles*, 442 F.3d 1178, 1185 (9th Cir. 2006); *see also Marsh v. County of San Diego*, 680 F.3d 1148, 1158 (9th Cir. 2012) (discussing "under color of state law"). A person deprives another of a constitutional right, "within the meaning of § 1983, 'if he does an affirmative act, participates in another's affirmative act, or omits to perform an act which he is legally required to do that causes the deprivation of which complaint is made.'" *Preschooler II v. Clark County Sch. Bd. of Trs.*, 479 F.3d 1175, 1183 (9th Cir. 2007) (quoting *Johnson v. Duffy*, 588 F.2d 740, 743 (9th Cir. 1978)). "The requisite causal connection may be established when an official sets in motion a 'series of acts by others which the actor knows or reasonably should know would cause others to inflict' constitutional harms." *Preschooler II*, 479 F.3d at 1183 (quoting *Johnson*, 588 F.2d at 743). This standard of causation "closely resembles the standard 'foreseeability' formulation of proximate cause." *Arnold v. Int'l Bus. Mach. Corp.*, 637 F.2d 1350, 1355 (9th Cir. 1981); *see also Harper v. City of Los Angeles*, 533 F.3d 1010, 1026 (9th Cir. 2008).

A plaintiff must demonstrate that each named defendant personally participated in the deprivation of his rights. *Iqbal*, 556 U.S. at 676-77. In other words, there must be an actual connection or link between the actions of the defendants and the deprivation alleged to have been suffered by the plaintiff. *See Monell v. Dep't of Soc. Servs. of City of N.Y.*, 436 U.S. 658, 691, 695 (1978).

\\\

4

**B.    Fourteenth Amendment Due Process Violations**

The Due Process Clause of the Fourteenth Amendment prohibits states from depriving individuals of "life, liberty, or property, without due process of law." U.S. Const. amend. XIV, § 1. The Due Process Clause protects prisoners from being deprived of liberty without due process of law. *Wolff v. McDonnell*, 418 U.S. 539, 556 (1974). "A section 1983 claim based upon procedural due process . . . has three elements: (1) a liberty or property interest protected by the Constitution; (2) a deprivation of the interest by the government; (3) lack of process." *Armstrong v. Reynolds*, 22 F.4th 1058, 1066 (9th Cir. 2022) (citation omitted).

Liberty interests may arise from the Due Process Clause itself or from state law. *Hewitt v. Helms*, 459 U.S. 460, 466–68 (1983). With respect to liberty interests arising from state law, the existence of a liberty interest created by prison regulations is determined by focusing on the nature of the deprivation. *Sandin v. Conner*, 515 U.S. 472, 481–84 (1995). Liberty interests created by prison regulations are limited to freedom from restraint which "imposes atypical and significant hardship on the inmate in relation to the ordinary incidents of prison life." *Id.* at 484.

Additionally, "[p]rison disciplinary proceedings are not part of a criminal prosecution, and the full panoply of rights due a defendant in such proceedings does not apply." *Wolff*, 418 at 556. The minimum procedural protections prison officials must provide an inmate facing disciplinary charges are: (1) a written notice of the charges at least 24 hours before the disciplinary hearing; (2) a written statement by the factfinders detailing the evidence relied upon and the reasons for the disciplinary action; (3) the right for the inmate to call witnesses and present documentary evidence, unless doing so would be unduly hazardous to institutional safety or correctional goals; and (4) assistance where the issues presented are complex or the inmate is illiterate. *See id.* at 564–70.

"Some evidence" must also support the hearing officer's decision, and the evidence must have some indicia of reliability. *Superintendent v. Hill*, 472 U.S. 445, 455 (1985); *accord Cato v. Rushen*, 824 F.2d 703, 705 (9th Cir. 1987). The "some evidence" standard is minimally stringent, and the relevant inquiry is whether "there is any evidence in the record that could support the conclusion reached." *Hill*, 472 U.S. at 455–56.

5

Furthermore, a plaintiff must also demonstrate that each named defendant personally participated in the deprivation of his rights. *Iqbal*, 556 U.S. at 676-77.

Plaintiff claims that his disciplinary proceedings violated the Due Process Clause because they were "conduct the wrong way." However, Plaintiff does not allege that the disciplinary proceedings failed to include the procedural protections listed above, such as written notice of the charges and a written statement by the factfinders detailing the evidence and the reasons for the disciplinary action. Moreover, Plaintiff's complaint does not allege that the decision lacked any evidence at all. Rather, Plaintiff's complaint alleges that "some mail . . . was sent under Plaintiff's name containing methamphetamine," which indicates that there was some evidence supporting the finding. Thus, Plaintiff's complaint fails to allege a violation of the Due Process clause.

Moreover, Plaintiff does not allege that Defendant Delgado in particular was responsible for the disciplinary proceeding. Rather, Plaintiff's complaint only alleges that defendant Delgado reviewed his grievance forms and failed to take proper action. However, a failure to properly process a grievance does not form a basis of a claim for violation of due process, although it may allow a plaintiff to proceed without exhausting administrative remedies. *See Andres v. Marshall*, 867 F.3d 1076, 1079 (9th Cir. 2017) ("When prison officials improperly fail to process a prisoner's grievance, the prisoner is deemed to have exhausted available administrative remedies."). Thus, Plaintiff's complaint fails to state a claim against Defendant Delgado for the additional reason that Plaintiff does not allege that Delgado personally participated in the activity that Plaintiff claims violated his constitutional rights.

Accordingly, Plaintiff fails to state any cognizable Fourteenth Amendment due process claim.

**C.     First Amendment Retaliation**

Plaintiff's complaint also states that Plaintiff was found guilty "as a purely retaliatory decision." (ECF No. 1, at p. 3). Specifically, after generally complaining about prison disciplinary proceeds, Plaintiff states:

It is obvious by now that this action against my family and I is a purely

retaliatory decision led by Mr. Diaz (ISU) and the fact that Plaintiff's name has not come up in any D.A. referral investigation proves my contention, it is a retaliation rather than an investigation because had a real investigation truly been done, surely, I would have been cleared of any wrongdoing.

(*Id.*).

The legal standards for a constitutional claim for retaliation in violation of the First Amendment are as follows:

Within the prison context, a viable claim of First Amendment retaliation entails five basic elements: (1) An assertion that a state actor took some adverse action against an inmate (2) because of (3) that prisoner's protected conduct, and that such action (4) chilled the inmate's exercise of his First Amendment rights, and (5) the action did not reasonably advance a legitimate correctional goal.

*Rhodes v. Robinson*, 408 F.3d 559, 567–68 (9th Cir. 2005) (footnote and citations omitted).

Plaintiff fails to state a constitutional claim for retaliation under the First Amendment under these legal standards. Plaintiff does not allege any facts supporting his claim that he was found guilty of the charge due to retaliation, not to mention retaliation against Plaintiff for exercising a constitutional right. Plaintiff does not allege that he exercised a constitutional right before Defendants found him guilty of the disciplinary violation. Plaintiff also does not allege any facts indicating that Defendants acted out of retaliation for Plaintiff exercising a constitutional right.

Accordingly, Plaintiff fails to state a cognizable First Amendment retaliation claim.

## IV.    FAILURE TO PROSECUTE AND COMPLY WITH COURT ORDER

The Court will likewise recommend dismissal based on Plaintiff's failure to prosecute this case and failure to comply with the Court's screening order. (ECF No. 9).

In determining whether to dismiss a[n] [action] for failure to prosecute or failure to comply with a court order, the Court must weigh the following factors: (1) the public's interest in expeditious resolution of litigation; (2) the court's need to manage its docket; (3) the risk of prejudice to defendants/respondents; (4) the availability of less drastic alternatives; and (5) the public policy favoring disposition of cases on their merits.

*Pagtalunan v. Galaza*, 291 F.3d 639, 642 (9th Cir. 2002) (citing *Ferdik v. Bonzelet*, 963 F.2d 1258, 1260-61 (9th Cir. 1992)).

"'The public's interest in expeditious resolution of litigation always favors dismissal.'"

*Id.* (quoting *Yourish v. California Amplifier*, 191 F.3d 983, 990 (9th Cir. 1999)). Therefore, the first factor weighs in favor of dismissal.

As to the Court's need to manage its docket, "[t]he trial judge is in the best position to determine whether the delay in a particular case interferes with docket management and the public interest. . . . It is incumbent upon the Court to manage its docket without being subject to routine noncompliance of litigants. . . ." *Id.* (citations omitted). Plaintiff has failed to respond to the Court's screening order. (ECF No. 9). This failure to respond is delaying the case and interfering with docket management. Therefore, the second factor weighs in favor of dismissal.

Turning to the risk of prejudice, "pendency of a lawsuit is not sufficiently prejudicial in and of itself to warrant dismissal." *Id.* (citing *Yourish*, 191 F.3d at 991). However, "delay inherently increases the risk that witnesses' memories will fade and evidence will become stale," *id.* at 643, and it is Plaintiff's failure to comply with a court order and to prosecute this case that is causing delay. Therefore, the third factor weighs in favor of dismissal.

As for the availability of lesser sanctions, given that Plaintiff has chosen not to prosecute this action and has failed to comply with the Court's order, despite being warned of possible dismissal, there is little available to the Court which would constitute a satisfactory lesser sanction while protecting the Court from further unnecessary expenditure of its scarce resources. Considering Plaintiff's *in forma pauperis* status, it appears that monetary sanctions are of little use to prompt him to comply with future orders. And given the stage of these proceedings, the preclusion of evidence or witnesses is not available. Further, as noted above, Plaintiff has failed to state a claim or respond to the Court's screening order despite being given the relevant legal standards and the opportunity to file an amended complaint. Thus, the lack of any viable claim supports a dismissal with prejudice rather than a lesser sanction. Therefore, the fourth factor weighs in favor of dismissal.

Finally, because public policy favors disposition on the merits, this final factor weighs against dismissal. *Id.*

After weighing the factors, the Court concludes that dismissal with prejudice is appropriate.

## V.      ORDER, CONCLUSION, AND RECOMMENDATIONS

Accordingly, IT IS ORDERED that the Clerk of Court is directed to assign a District Judge to this case.

Further, for the reasons given above, IT IS RECOMMENDED as follows:

1.      This action be dismissed, with prejudice, for failure to state a claim, failure to prosecute, and failure to comply with a court order.

2.      The Clerk of Court be directed to close this case.

These findings and recommendations are submitted to the United States District Judge assigned to the case, pursuant to the provisions of Title 28 U.S.C. § 636(b)(1). Within thirty (30) days after being served with these findings and recommendations, Plaintiff may file written objections with the Court. Such a document should be captioned "Objections to Magistrate Judge's Findings and Recommendations." Any objections shall be limited to no more than fifteen (15) pages, including exhibits.

Plaintiff is advised that failure to file objections within the specified time may result in the waiver of rights on appeal. *Wilkerson v. Wheeler*, 772 F.3d 834, 838-39 (9th Cir. 2014) (citing *Baxter v. Sullivan*, 923 F.2d 1391, 1394 (9th Cir. 1991)).

IT IS SO ORDERED.

Dated:    **February 18, 2026**                    /s/ *Erica P. Grosjean*

                                                                    UNITED STATES MAGISTRATE JUDGE